# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-30745

United States Court of Appeals
Fifth Circuit

**FILED**

July 17, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

LEANNA MARIE HANCHETT, also known as LeAnna Marie Duhon,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:16-CR-200-4

Before DENNIS, CLEMENT, and ENGELHARDT, Circuit Judges.

PER CURIAM:[*]

Leanna Marie Hanchett pleaded guilty to conspiracy to use or traffic in unauthorized access devices and was sentenced to serve 40 months in prison and a three-year term of supervised release. As a condition of supervised release, the district court ordered that Hanchett "complete a mental health assessment and, based upon those results, submit to mental health treatment at the direction of the U.S. Probation office." She now challenges this condition

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

of supervised release, arguing that it is improper because there is nothing in the record indicating that she needs a mental health assessment or treatment.

As Hanchett acknowledges, because she failed to object to this condition of supervised release in the district court, our review is for plain error. *See United States v. Gordon*, 838 F.3d 597, 604 (5th Cir. 2016). To meet this standard, Hanchett must show an error that is clear or obvious and affects her substantial rights. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). If she satisfies these requirements, this court has discretion to remedy the error if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks and citation omitted).

Under 18 U.S.C. § 3583(d), the district court when imposing special conditions of supervised release must ensure that the conditions are reasonably related to the 18 U.S.C. § 3553(a) sentencing factors, which include the need for the defendant to obtain "medical care, or other correctional treatment." *United States v. Paul*, 274 F.3d 155, 164–65 (5th Cir. 2001). The conditions may not impose any "greater deprivation of liberty than is reasonably necessary" to achieve this goal. *Id.*; *see* §§ 3583(d)(2), 3553(a)(2)(D).

The district court did not give any reasons for imposing the mental health condition, and review of the record shows nothing indicating a need for this medical assessment. We addressed such a scenario in *Gordon*, vacating a similarly unsupported condition imposing mental health treatment on plain error review. 838 F.3d at 603–05. Like the condition mandating mental health treatment in *Gordon*, the condition requiring that Hanchett undergo a mental health assessment has no basis in the record and imposes financial costs, a time commitment, and the unwarranted perception that she requires such an assessment. *Id.* at 605. Accordingly, we find that the condition is plainly

erroneous, affects Hanchett's substantial rights, and warrants the exercise of our discretion to remedy it. *Id.*

The condition of supervised release requiring Hanchett to "complete a mental health assessment and, based upon those results, submit to mental health treatment at the direction of the U.S. Probation office" is hereby VACATED, and the judgement is MODIFIED accordingly.

No. 17-30745

KURT D. ENGELHARDT, Circuit Judge, dissenting:

Although the district court did not explicitly state reasons for imposing the mental health condition, I disagree that a review of the record is void of facts indicating a potential need for such assessment.  Therefore, with respect, I dissent.

On January 24, 2017, the defendant, Leanna Marie Hanchett, appeared before the district judge to enter a guilty plea to a charge of conspiracy to use or traffic an unauthorized access device.[1]   On July 26, 2017, with the benefit of a presentence investigation report (PSR), the district judge sentenced the defendant to serve 40 months in prison to be followed by a three-year term of supervised release.  Among other special conditions of supervised release, the district court ordered that the defendant "complete a mental health assessment and, based upon the results, submit to mental health treatment at the direction of the U.S. Probation Office," which she now challenges after failing to object below.

Because Hanchett did not object in the district court, we review the imposed supervised release conditions only for plain error. Thus, she is burdened with overcoming plain error review by showing that such error is clear or obvious and affects her substantial rights.  *Puckett v. United States,* 556 U.S. 129, 135 (2009).  If that burden is met, a court of appeals maintains discretion to remedy any such error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal citations omitted). "Although the modifiable nature of a special condition is not dispositive, a defendant faces an uphill battle when [she] seeks to convince us that a

---

[1] In committing this offense, the co-conspirators systematically utilized unauthorized credit cards with high limits issued in the name of someone else, along with false, temporary Texas identification cards (bearing the same name but a co-conspirator's photograph), to obtain cash advances from casinos throughout the Western District of Louisiana.

4

modifiable condition seriously affects the fairness, integrity or public reputation of the judicial proceeding." *Id.*; 18 U.S.C. §3583(e)(2) (district court may modify conditions of supervised release at any time prior to expiration or termination of the term). Although the district judge failed to expressly state his reasons for imposing this condition, such that his rationale might be unclear, we can nevertheless affirm if his "reasoning can be inferred after an examination of the record." *United States v. Gordon*, 838 F.3d 597, 604 (5th Cir. 2016) (quoting *United States v. Salazar*, 743 F.3d 445, 451 (5th Cir. 2014)).

In this instance, Hanchett's PSR reflects no history of mental health issues or treatment. Nevertheless, the record suggests the necessary support for the ordered assessment may exist, when considered from the perspective of the sentencing judge.  Accordingly, if the condition of supervised release is to be vacated, this court, in my opinion, should remand the matter for further proceedings in the district court, where the sentencing judge's reasoning can be clarified, rather than simply replacing the district court's judgment with our own, especially as to completely forgoing a prescribed condition as sensitive as this one.

First, the defendant has been married to her co-defendant, Ernest Duhon, III, since 2012.  Although the record on appeal (in Hanchett's case) does not include any of *his* background information, the district judge was certainly privy to that information, and had an opportunity to not only consider it, but also to make firsthand assessments of the couple in open court, albeit on separate occasions.[2]  Duhon's background, as well as the couple's observed conduct, were no doubt considered by the judge before whom they appeared, and quite reasonably impacted his decision to require Hanchett, but *not*

---

[2] Hanchett entered a guilty plea on January 24, 2017; Duhon followed on February 28, 2017. Duhon was sentenced on June 8, 2017; Hanchett followed on July 26, 2017.

Duhon, or any of the other co-defendants, to undergo a mental health assessment upon release from incarceration.

Second, the PSR reflects that Hanchett, who is 45 years old, has persistently committed crimes of this nature (theft upon false pretenses involving substantial sums of money or valuable property) for the last twenty years.[3] The instant offense, moreover, occurred while she was on probation for a prior such offense. Clearly, a lengthy criminal history considered alone does not *necessitate* a mental health evaluation being a condition to a release from custody. Such an assessment, however, should be within the discretion of the sentencing judge when considered in the context of this particular defendant: a college-educated mother of five children (ages 5 to 24), who has held and is

---

[3] According to the PSR, Hanchett's first reported criminal conviction was in May 1999 for criminal conduct occurring in September 1996 and in April 1999. In 1996, she never returned a car taken for a test drive at three different car dealerships. With each, she utilized a stolen driver's license and fake insurance card to obtain the test drive. She admitted to working for a friend to earn extra money by providing him fake driver's licenses and stealing cards for him. In April 1999, she committed credit/debit card abuse by attempting to obtain a cash advance from a Wells Fargo bank using a stolen credit card and fake driver's license. She was arrested when the bank teller found the transaction suspicious. Following her guilty plea in May 1999, Hanchett was sentenced to serve seven (7) months imprisonment with 43 days credit, community supervision for three (3) years, and payment of a $500 fine.

On December 22, 2006, Hanchett committed check forgery for which she was arrested in August 2007 and pleaded guilty in September 2009. She was sentenced to ten (10) months imprisonment.

On or about November 27, 2009, Hanchett "unlawfully appropriated . . . without the effective consent of the owner" jewelry from Zales, and a television, a computer, and a Wii from Wal-Mart. As a result, she was convicted of two counts of theft of property, a third degree felony ($1500-$20,000), sentenced to ten (10) years of incarceration, suspended, with five (5) years supervised probation. The probation term was extended by two years in 2016 based on conduct that forms, in part, the basis of the instant federal offense. (A separate prosecution was instituted for that conduct in Louisiana state court upon Hanchett's arrest on October 22, 2015. Hanchett entered a guilty plea on March 1, 2016 for unauthorized use of an access card and was sentenced to three (3) years imprisonment, with hard labor, suspended, with 3 years of supervised probation and payment of $9,901.90 to Horseshoe Casino.)

capable of lawful, gainful employment, but yet also has repeatedly engaged in blatantly reckless and unlawful conduct with obviously negative consequences for herself and her children. Indeed, Hanchett earned a bachelor of science degree from Texas Southern University in "Administration of Justice" (of all things), as well as a teaching certificate, and worked for a number of years as a special education teacher. Far from using her education to further justice or educate youth, while also supporting herself and her five children by legal means, she completely abandoned lawful employment in 2008.

Third, Hanchett's recidivous criminal history (see footnote 3) suggests that her metamorphosis from incarceration to law-abiding citizen has been quite challenging such that standard release conditions are obviously inadequate. If the true goal of sentencing, and specifically supervised release, is to aid in such transition, the district judge is charged with imposing constructive conditions on supervised release that are ultimately designed to prevent future criminal conduct and afford an offender the opportunity to liberate herself from such tendencies. This is one of the many important considerations of the district judge, and, except when no evidence whatsoever appears in the record, we should attempt to accommodate the district judge's discretion to accomplish this goal.

Fourth, unless reflected in a letter from Hanchett that was expressly referenced by the district judge, but unfortunately was not included in the record on appeal, Hanchett at sentencing offered no expression of remorse or (attempted) justification of her conduct based on extraordinary financial need (for her children and/or disabled family members). To the contrary, the record reflects that she has been unemployed since 2008, married to co-defendant Duhon, the father of her youngest child, since 2012, and recruited co-defendant Christopher Hardy to become involved in this conspiracy.

Fifth, the PSR does not reflect that Hanchett has suffered the troubled upbringing and/or substance abuse problems commonly shared by many

criminal offenders. Significantly, while imposing a mental health assessment condition of supervised release, the district judge suspended the drug testing requirement for her.

Sixth, the record does not suggest that the district judge included a mental health assessment in Hanchett's sentence as the result of a mistake or clerical error. The condition was both ordered during the sentencing hearing and included in the written judgment and statement of reasons for sentence. Furthermore, although two of Hanchett's co-defendants were ordered to undergo substance abuse *treatment* as a condition of supervised release, Hanchett was the only one of the six[4] required to undergo a mental health *assessment* (with actual *treatment* being dependent upon the assessment results). The district judge's decisions regarding sentencing appear to be rather carefully nuanced, and tailor-made on an individual basis.[5]

Additionally, although the majority opinion cites to this court's decision in *Gordon*, it is inapposite. Although the plain error standard likewise applied in *Gordon,* the government *joined* that defendant in asking the court to "vacate and strike the [mental health program special condition] as unsupported by the record evidence." 838 F.3d at 604. Finding the violent nature of Gordon's prior convictions and the pending charge to relate to the anger management condition, rather than the mental health condition, this court understandably agreed. In any event, unlike in *Gordon*, only a mental health *assessment* is

---

[4] Although seven defendants were named in the indictment, defendant Christopher Hardy died before sentencing.

[5] To the extent that a confidential recommendation might have been made by the probation officer, relative to the mental health assessment condition, in accordance with Rule 32(e)(3) of the Federal Rules of Criminal Procedure, that document has not been included in the record on appeal. Thus, as with the letter from the defendant that the district judge referenced during sentencing, this court does not know whether either of these documents contained information justifying the imposition of the mental health assessment ordered by the district court. Thus, for this additional reason, remand is warranted.

definite at this juncture of the instant proceeding; the necessity of *actual treatment* (along with its associated costs and purported stigma) is dependent upon the results of the completed assessment.

Lastly, in declining to afford the district judge an opportunity, on remand, to provide specific reasons for requiring a mental health assessment as a condition of supervised release, the court usurps the district judge's role as the sentencing judge; or, worse yet, elevates the probation officer's decisions (by virtue of his/her designation of the scope of inquiry to the defendant, her family members, etc., in obtaining information to include in the PSR and in formulating any recommendations based on such information) above that of the Article III district judge. And purely as an administrative matter, the defendant's judgment is best modified (if such is appropriate) at the district court, where the new document will then accurately reflect the entirety of the sentence. In other words, the district court judgment may then reflect *all* changes made to the original sentence, if any, rather than counsel and others having to reference the circuit's opinion after the original judgment.[6]

Accordingly, in deference to the experience and wisdom of the district judge, who dealt with the defendant firsthand at both her change of plea hearing and sentencing hearing, I would vacate this condition of supervised release and remand the matter for further proceedings. On remand, the district court would then have the option of clearly stating for the record the reasons for such condition; or reconsider and not impose this condition; or set an evidentiary hearing at which time the government and the defendant can make their respective cases regarding the need (or undesirability) of such condition. The court's concerns about any financial costs, commitment of time

---

[6] Given the difficulty of keeping up with judgments over time and the numerous collateral consequences that require people to look at judgments years later, it seems advisable that a single complete self-contained judgment should exist in the district court record for future reference.

and resources, and unwarranted perception imposed on the defendant can surely be adequately considered by the district judge in making such determination on the record.